O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, | ) ) ) | Case No. CV 13-02046 DDP (JCGx) |
| Plaintiff, | ) ) | **AMENDED** ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | |
| ACTION EXPRESS, LLC, | ) ) | [Dkt. No. 20] |
| Defendant. | ) ) ) | |
| _____ | ) | |

   Before the court is Defendant Action Express, LLC ("Action Express")'s Motion for Summary Judgement, or in the Alternative, for Partial Summary Judgement. (Dkt. No. 20.) The motion is fully briefed and suitable for decision without oral argument. Having considered the parties' submissions, the court adopts the following order.

**I.  Background**

   The instant suit is a subrogation action by an insurer, Sompo Japan Insurance Company of America ("Sompo"), against a motor carrier, Action Express, arising from a stolen shipment of electronics that Sompo insured.

In January 2008, Kenwood U.S.A. ("Kenwood") hired Daylight Transportation ("Daylight") to transport electronics from Long Beach, California to Doral, Florida. (Defendant's Statement of Uncontroverted Facts ("SUF"), Dkt. No. 22, ¶ 1.) Daylight, in turn, contracted with Action Express to complete the transportation of the cargo. (See SUF ¶ 4.) While Action Express was transporting the electronics to Doral, Florida, the tractor trailer containing the cargo was stolen from a truck stop in Wildwood, Florida. (Id. ¶ 5.)

Kenwood claims the cargo that was lost during the theft was valued at $103,094.80. (Id. ¶ 6.) Kenwood filed a claim against Daylight for the loss. (Id. ¶ 7.) Daylight settled with Kenwood by paying Kenwood $30,700. (Id. ¶ 8.) This amount corresponds to the maximum amount recoverable under a limitation of liability provision in the Kenwood-Daylight contract, which limited liability to $25.00 per pound per package subject to a maximum of $100,000 per shipment. (Id. ¶ 3, 8.) Action Express reimbursed to Daylight the $30,700 settlement paid to Kenwood. (Id. ¶ 9.)

Kenwood was insured against the loss of the cargo by Plaintiff Sompo. Pursuant to this insurance policy, Sompo paid Kenwood $82,704.28 to settle the loss claim. (Id. ¶ 10.) This amount apparently corresponds to 110% of the alleged value of the stolen Cargo (Sompo's maximum liability under the insurance policy) less $30,700 (the amount of Kenwood's settlement with Daylight).

In the instant suit, Sompo brings a subrogation action against Action Express under 49 U.S.C. § 14076, the Carmack Amendment, to recover the $82,704.28 it paid Kenwood under the

2

policy, plus prejudgment interest and costs. (See First Amended Complaint at 3.)

Defendant Action Express moves for summary judgment, or in the alternative, partial summary judgment, inter alia on the grounds that (1) Sompo is precluded under the doctrine of superior equities from pursuing a subrogation claim against Action Express, and (2) Kenwood, and therefore Sompo as subrogee, is contractually prohibited from recovering more than $30,700 and Daylight has already paid Kenwood this maximum recoverable sum. (See Motion at 8.)

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. <u>Carmen v. San Francisco Sch. Dist</u>., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." <u>Id.</u>

**III. Discussion**

Action Express contends that Sompo is precluded from bringing its subrogation claim against it under the doctrine of superior equities. The court agrees.

4

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." <u>Fireman's Fund Ins. Co. v. Maryland Casualty Co</u>, 65 Cal.App.4th 1279, 1291 (1998). "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid. When an insurance company pays out a claim on a property insurance policy, the insurance company is subrogated to the rights of its insured against any wrongdoer who is liable to the insured for the insured's damages." <u>State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.</u>, 143 Cal.App.4th 1098, 1106 (2006) (quotation marks and citations omitted). An insurer, in its role as subrogee, has no greater rights than those possessed by its insured, and its claims are subject to the same defenses. <u>See</u> <u>Liberty Mut. Ins. Co. v. Fales</u>, 8 Cal.3d 712, 717 (1973)

"While the insurer by subrogation steps into the shoes of the insured, that substitute position is qualified by a number of equitable principles. . . . The most restrictive principle is the doctrine of superior equities, which prevents an insurer from recovering against a party whose equities are equal or superior to those of the insurer." <u>State Farm</u>, 143 Cal.App.4th at 1106-07 (citing inter alia <u>Meyers v. Bank of America Nat. Trust & Savings Ass'n</u>, 11 Cal.2d 92, 102-103 (1938). The requirement that an insurer demonstrate superior equities to those of any third party from whom it seeks recovery in a subrogation action derives in part from the fact that the insurer has been paid a premium to assume the risk of loss. <u>See</u> <u>id.</u> at 1110. In California, the doctrine of superior equities applies in all cases of equitable or conventional

5

1  subrogation, regardless of the source of the insurer's claim. See
2  id. at 1109 (citing inter alia Meyers, 11 Cal.2d at 101-103; Jones
3  v. Aetna Casualty & Surety Co., 26 Cal.App.4th 1717, 1724 (1994)).
4     In general, an insurer may seek recovery from the "direct
5  cause of the loss (e.g., a dishonest employee, burglar, or fire
6  starter) or the direct cause of the loss (e.g., a bank, alarm
7  company, or contractual indemnitor)". Id at 1113. In the case of a
8  claim against the direct cause of a loss, "an innocent insurer will
9  always have superior equities." Id. The analysis may be more
10 complicated when weighing the equities of third parties who did not
11 directly cause the loss but whose conduct contributed to or
12 permitted the loss, as the third party's degree of responsibility
13 for the loss varies from case to case. See id. However, in order
14 for the insurer to pursue a valid subrogation action, the third
15 party against whom such an action is brought must always be "guilty
16 of some wrongful conduct which makes his equity inferior" to that
17 of the insurer. Golden Eagle Ins. Co. v. First Nationwide Fin.
18 Corp., 26 Cal.App.4th 160, 171 (1994).
19    Action Express contends that Sompo has failed to create a
20 triable issue of material fact as to any wrongful conduct by Action
21 Express relative to the loss. (See Mot. at 13; Reply at 5.)
22 Sompo asserts that the theft of its cargo was caused by Action
23 Express's negligence in failing to take adequate protections to
24 safeguard the cargo. (See Opposition at 10.)
25    In general, subrogation rights may be invoked against a third
26 party that indirectly causes a loss by failing to adhere to certain
27 **prescribed** procedures which could have avoided the loss. See In
28 Barclay Kitchen, Inc. v. California Bank, 208 Cal.App.2d 347 (1962)

6

1  (allowing insurer's subrogation claim against insured's bank where
2  the bank's deviation from its standard procedures enabled insured's
3  employee to carry out embezzlement scheme); <u>Hartford Fire Ins. Co.</u>
4  <u>v. Riefolo Constr. Co., Inc.</u>, 81 N.J. 514 (1980) (allowing surety's
5  subrogation claim against third party bank where bank's employees
6  failed to verify the validity of a forged check); <u>State Farm</u>, 143
7  Cal.App.4th at 788, 801 (allowing insurer's subrogation claim
8  against owner of apartment complex adjacent to insureds'
9  condominium where apartment owner's failure to provide fire
10 resistant trash container and safety instructions to tenants
11 contributed to the spread of a fire started by ashes deposited by a
12 tenant in trash container, damaging insureds' property).

13     Here, however, unlike the circumstances in <u>Barclay</u>, <u>Hartford</u>,
14 and <u>State Farm</u>, the insurer, Sompo, has failed to allege any facts
15 or point to any evidence tending to demonstrate that Action Express
16 failed to adhere to any **prescribed** safety procedures or was
17 otherwise guilty of wrongful conduct that contributed to the loss.
18 The only relevant allegations in Sompo's First Amended Complaint
19 are as follows:

20     8.    En route to the final destination, on or about February 4, 2012, Defendants, and each of them, stopped at a truck stop located at 493 W SR, Wildwood, Florida. During this intermission of delivery, the subject cargo was, due to lack of safeguards by Defendants, stole.

23     9.    Defendants, and each of them, failed to deliver the subject cargo as a result of a theft at 493 W SR 44, Wildwood, Florida.

25 (First Amended Complaint ¶ 8, 9.) Sompo does not describe, in the
26 FAC or its Opposition to the present Motion, what safeguards it
27 believes Action Express failed to employ.

7

1    The only evidence Sompo cites in support of its contention
2 that Action Express was negligent in failing to safeguard the cargo
3 against theft is a police report concerning the theft. (See
4 Plaintiff's Statement of Genuine Issues in Support of its
5 Opposition, ¶¶ 19, 20; Segura Decl. Ex. B at 36-39 (Police
6 Report).) Sompo refers to the police report only generally, without
7 identifying any aspect of the report supporting its contention that
8 Action Express acted negligently. A review of the police report
9 finds no basis for Sompo's contention. The report states in
10 relevant part only that the driver of the truck informed the
11 investigating officer that he parked the truck at a truck stop,
12 locked the vehicle, took the vehicle's keys with him as he and
13 another occupant went to purchase some items and take a shower, and
14 returned 30 minutes later to find that the truck and trailer were
15 missing.[1] (Segura Decl. Ex. B at 37.) Nothing in the report appears
16 to support a finding that Action Express acted negligently or
17 failed to follow **prescribed** safeguards to prevent theft.

---

[1] The relevant passage of the police report states as follows:
> [The driver] stated that he drove a white freightliner with a white 53' trailer (registration number for the trailer KVY3617L) into the parking lot of the Pilot at approximately 11:30 hours, and backed ito a parking spot located behind the Pilot. He advised the truck was an owner operator but could not provide the owner's information. He stated that the truck had the words Action Express in red letters on the doors, and had the number 305 on the front fenders. He stated that he entered the Pilot with Omar to purchase some items and take showers. He stated that he locked the doors and had the keys in his possession. He stated they were in the store approximately 30 minutes. [The driver] stated he then returned to the parking lot and truck and trailer was [sic] missing.

(Segura Decl. Ex. B at 37.)

8

The absence of evidence tending to show Action Express engaged in wrongful conduct is fatal to Sompo's subrogation claim because, lacking such evidence, there is no basis on which to find that Sompo's equities are superior to those of Action Express.

In light of this conclusion, the court does not reach Action Express's additional arguments in support of its motion for summary judgment.

**IV.  Conclusion**

For the reasons stated herein, Action Express's Motion for Summary Judgement is GRANTED.

IT IS SO ORDERED.

Dated: June 4, 2014

DEAN D. PREGERSON
United States District Judge